## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RENE NETTER                                      CIVIL ACTION

VERSUS                                              NO. 15-584

N. BURL CAIN                                    SECTION: "F"(3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Rene Netter, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On July 9, 2010, he was convicted of simple burglary of an inhabited dwelling under Louisiana law.[1]  On September 1, 2010, he was found to be a fourth offender and was sentenced as such to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[2]  On November 29, 2011, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and habitual offender adjudication; however, the court vacated his sentence

---

[1] State Rec., Vol. 1 of 3, transcript of July 9, 2010, p. 132; State Rec., Vol. 1 of 3, minute entry dated July 9, 2010; State Rec., Vol. 1 of 3, jury verdict form.
[2] State Rec., Vol. 1 of 3, transcript of September 1, 2010; State Rec., Vol. 1 of 3, minute entry dated September 1, 2010.

and remanded the matter for resentencing.[3]  The Louisiana Supreme Court then denied his related writ application on August 22, 2012.[4]

In the interim, on January 19, 2012, the state district court resentenced petitioner to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[5]

On July 31, 2013, petitioner filed an application for post-conviction relief with the state district court.[6]  That application was denied on January 7, 2014.[7]  His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on March 14, 2014,[8] and by the Louisiana Supreme Court on January 9, 2015.[9]

On February 18, 2015, petitioner filed the instant federal application seeking habeas corpus relief.[10]  The state filed a response conceding that the application was timely and that petitioner exhausted his remedies in the state courts; however, the state argued that relief should be denied on the merits.[11]  Petitioner filed a reply to the state's response.[12]

### Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that

---

[3] State v. Netter, 79 So.3d 478 (La. App. 5th Cir. Nov. 29, 2011); State Rec., Vol. 2 of 3.
[4] State ex rel. Netter v. State, 97 So.3d 357 (La. 2012); State Rec., Vol. 2 of 3.
[5] State Rec., Vol. 2 of 3, minute entry dated January 19, 2012.
[6] State Rec., Vol. 2 of 3.
[7] State Rec., Vol. 2 of 3, Order dated January 7, 2014.
[8] Netter v. Cain, No. 14-KH-104 (La. App. 5th Cir. Mar. 14, 2014); State Rec., Vol. 2 of 3.
[9] State ex rel. Netter v. Cain, 157 So.3d 591 (La. 2015); State Rec., Vol. 3 of 3.
[10] Rec. Doc. 3.
[11] Rec. Doc. 17.
[12] Rec. Doc. 18.

state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

3

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

4

[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## **Facts**

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

Joshua Veal testified that at the time of the commission of the offense, he and defendant had been acquaintances for about a month. At some point during this time, Veal agreed to purchase a truck from defendant for $500.00. According to Veal, he paid defendant in cash, but never received the truck. Unable to provide Veal with the truck, which he claimed had been stolen, defendant owed Veal the return of the $500.00, but did not have the money to pay him. Late in the evening on June 5, 2009, Veal encountered defendant outside of a Brothers Food Mart on Airline Drive. Here, defendant told Veal that his girlfriend had a check for $500.00

5

that they could obtain from her.  From there, they walked to a nearby trailer park, where defendant claimed his girlfriend lived.

Around 2 a.m. on June 6, 2009, Ms. Ingeborg Tompkins, was awakened in her trailer by the sound of breaking glass, followed by a flashlight in her face and her arms pinned down to her bed with a crowbar in her side.[FN2]  Defendant, whom Ms. Tompkins had described as a heavyset, black person with a black jacket and hood over his bald head, repeatedly yelled at her, "Where is the money?"  Ms. Tompkins then noticed another individual behind defendant, whom she described as "a very skinny black gentleman," "very nice," "gentle," "very protective."  Veal, who had been told by defendant to stay outside because his girlfriend did not like visitors, had entered the trailer when he heard the victim screaming, "Help me!"  According to Ms. Tompkins, as Veal entered the bedroom, defendant addressed him, "Joe, bring me the knife.  I'm going to kill that bitch."[FN3]  Soon thereafter, when Ms. Tompkins informed defendant that she did not have any money, he released her.  Veal helped her up to go to the bathroom, telling her, "I'm coming back tomorrow.  I'll straighten it out."  When the victim exited the bathroom, both men were gone, her bedroom was "a shamble," and about seven dollars in change, a cellular phone, two purses, and two bottles of perfume were missing.  Ms. Tompkins then called the police, who arrived shortly thereafter.

> [FN2]  Ms. Tompkins was 78 years old, lived alone, and used a wheelchair.  She was the manager of the trailer park and was responsible for collecting rent, which was paid in cash, checks, or money orders.

> [FN3] Joshua Veal testified that defendant stated, "Bobby, bring the knife.  I'm going to slit her throat."

Following a broadcast relative to the burglary, Sergeant Russell Moran, who was on patrol in the area, observed two subjects that matched the description of the perpetrators.  He saw that the heavyset one had something tucked under his arm and made a throwing motion as the officer passed by.  When Sergeant Moran made a U-turn to stop the subjects, he noticed the smaller of the two men walking down the street toward him flailing his arms.  It was Veal.  He told Sergeant Moran that the person the officer was looking for ran through his backyard.

After other officers arrived on the scene and Veal had been detained, Sergeant Moran began to search for defendant.  He found him lying on the ground along the side of a house at 900 Compromise Street, attempting to not be seen.[FN4]  A few feet away, the victim's purse and perfume bottles were found.  Defendant was arrested and a search incident to arrest was conducted, which revealed a flathead screwdriver and a pair of black insulated gloves.  As the arresting officer began to read defendant his Miranda[FN5] rights, defendant cut him off, saying, "I know about all this because, man, I know about all this.  This is all I know how to do."  "Take me to jail."

[FN4]   Joshua Veal lived at 2114 9th Street, just east of 900 Compromise Street.  At Mr. Veal's residence, a crowbar was found on the side of the house and a flashlight on the porch.

[FN5]  Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

After both suspects had been apprehended, Ms. Tompkins was transported by police officers to the suspects' location.  The victim had not seen the suspects' faces, but she was able to identify them based on their body types.[13]

## Ineffective Assistance of Counsel

In his federal application, petitioner claims that he received ineffective assistance of counsel.  In the state post-conviction proceedings, the state district court denied that claim, holding:

It is clear that the petitioner has a Sixth Amendment right to effective legal counsel.  Under the well-known standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and State v. Washington, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.  State v. Legrand, 2002-1462 (La. 12/3/03), 864 So.2d 89.

To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment.  A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted.  It is absolutely essential that both prongs of the Strickland test must be established before relief will be granted by a reviewing court.

Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation.  Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance.  State v. Soler, 93-1042 (La. App. 5th Cir. 4/26/94), 636 So.2d 1069, 1075.

Mindful of controlling federal and state jurisprudence, this court now turns to the specific claims of ineffective assistance made in petitioner's application and argued in the memorandum in support, as well as the State's response.

In his application, petitioner argues that he was drinking heavily prior to the offense, and combined with his depression, which affected his ability to rationalize, comprehend, and make decisions.  Petitioner argues that defense counsel failed to investigate, perform discovery, and interview witnessed [sic] regarding petitioner's intoxication at the time of the offense, his substance abuse and depression.  He

---

[13] State v. Netter, 79 So.3d 478, 480-81 (La. App. 5th Cir. Nov. 29, 2011); State Rec., Vol. 2 of 3.

argues that counsel failed to perform pre-trial investigation, discovery, interview or call witnesses, resulting in deprivation of due process and right to fair trial.

The court finds no merit, as witnesses testimony contradicts the allegations. Furthermore, petitioner's arguments are speculative and conclusory. Petitioner fails to provide to the court any evidence in support of his claims. Petitioner does not prove that counsel acted ineffectively, or any prejudice resulting.

Petitioner also claims that counsel was ineffective for failing to challenge sanity and competency. However, defense counsel did in fact file a *Motion to Appoint a Sanity Commission to Determine Capacity to Stand Trial*. The court found petitioner competent to proceed. Furthermore, the court-appointed mental health experts did not find any signs or symptoms of major psychiatric illness, and the examination failed to reveal evidence of significant psychopathology. Again, petitioner fails to provide any evidence in support of his claim. Thus, the court finds no merit to this claim and issues surrounding. Petitioner's argument is speculative and conclusory. Petitioner fails to prove any deficiency in counsel's performance, or prejudice resulting there from.

Petitioner's claim involving counsel's failure to file a Motion to Reconsider Sentence, and the excessiveness of the sentence, is procedurally barred as this claim is not cognizable for review in post-conviction relief. LSA-C.C.P. Art. 930.3 provides,

> *If the petitioner is in custody after sentence for conviction for an offense, relief shall be granted only on the following grounds:*
>
> *(1)  The conviction was obtained in violation of the constitution of the United States or the state of Louisiana;*
> *(2)  The court exceeded its jurisdiction;*
> *(3)  The conviction or sentence subjected him to double jeopardy;*
> *(4)  The limitations on the institution of prosecution had expired;*
> *(5)  The statute creating the offense for which he was convicted and sentenced is unconstitutional; or*
> *(6)   The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana.*
> *(7) The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.*

The Supreme Court of Louisiana in State *ex rel.* Melinie v. State, 665 So.2d 1172 (La. 1/12/96), has held that article 930.3 provides no basis for review of claims of excessiveness or other sentencing error in post-conviction proceedings. See also State v. Hebreard, 708 So.2d 1291, 98-0385 (La.App. 4 Cir. 3/25/98), which explicitly decreed that a challenge to petitioner's adjudication as a multiple offender was not a proper ground for post-conviction relief.

Furthermore, under <u>State v. Cotton</u>, the Louisiana Supreme Court ruled that respondent's post-conviction claim that he received ineffective assistance of counsel at his habitual offender adjudication is not cognizable on post-conviction relief:

> Writ granted. The appellate court's order granting respondent's writ and remanding the case to the district court is vacated and the district court ruling dismissing the application is reinstated. In <u>State ex rel. Melinie v. State</u>, 93-1380 (La. 1/12/96), 665 So.2d 1172, this Court construed the provisions of La.C.Cr.P. art. 930.3 and determined that they "provide[ ] no basis for review of claims of excessiveness *or other sentencing error* post-conviction." (Emphasis added). Although respondent argues that an unreasonable delay in instituting the habitual offender proceedings provides him with a claim for post-conviction relief under La.C.Cr.P. art. 930.3(4) ("The limitations on the institution of prosecution had expired."), an habitual offender adjudication does not pronounce a separate conviction or institute a separate criminal proceeding, but instead "only addresses itself to the sentencing powers of the trial judge after conviction and has no functional relationship to ... innocence or guilt...." <u>State v. Walker</u>, 416 So.2d 534, 536 (La. 1982); <u>see also</u> <u>State v. Dorthey</u>, 623 So.2d 1276, 1278 (La. 1993) (habitual offender bill of information "does not charge a new crime but merely advises the trial court of circumstances...."). An habitual offender adjudication thus constitutes sentencing for purposes of <u>Melinie</u> and La.C.Cr.P. art. 930.3, which provides no vehicle for post-conviction consideration of claims arising out of habitual offender proceedings, as opposed to direct appeal of the conviction and sentence. La.C.Cr.P. art. 912(C)(1) (defendant may appeal from a judgment "which imposes sentence"). A fortiori, respondent's claim that he received ineffective assistance of counsel at his habitual offender adjudication is not cognizable on collateral review so long as the sentence imposed by the court falls within the range of the sentencing statutes. <u>Cf</u>. La.C.Cr.P. art. 882.

<u>State v. Cotton</u>, 2009-2397 (La. 10/15/10), [4]5 So.3d 1030. These claims are not cognizable in an application for post-conviction relief, and thus will be denied.[14]

In denying petitioner's related writ application, the Louisiana Fifth Circuit Court of Appeal

then further held:

> In this writ application, relator, Rene Netter, seeks review of the district court's denial of his application for post-conviction relief which raised claims of

---

[14] State Rec., Vol. 2 of 3, Order dated January 7, 2014.

ineffectiveness of counsel. In addition, relator maintains that the district court erred in denying his claims without an evidentiary hearing.

In his application for post-conviction relief, as well as in his writ application filed with this Court, relator raises various allegations of ineffective assistance of counsel. Specifically, relator claims that defense counsel failed to investigate, perform discovery, and interview witnesses regarding his intoxication at the time of the offense and his substance abuse and depression. Further, relator alleges that, although defense counsel filed a motion to appoint a sanity commission, he failed to pursue evaluation and testing with regard to relator's competency to proceed or his sanity at the time of the offense. As a result of these deficiencies on the part of defense counsel, relator asserts that he was deprived of his right to present a defense and his right to a fair trial.

We have reviewed all of the allegations presented by relator in his writ application and agree with the trial court's determination that relator failed to prove that counsel's performance was deficient and that the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As noted by the district court, relator's arguments are "speculative and conclusory," and he "fails to provide to the court any evidence in support of his claims." Moreover, defense counsel did file a motion to appoint sanity commission. Relator was examined by court appointed doctors, a hearing was conducted, and relator was found competent to proceed to trial.

Relator also claims that his sentence was excessive and that defense counsel acted deficiently in the multiple offender proceedings because he failed to file a motion to reconsider sentence. As noted by the district court in its January 7, 2014 order, "[t]hese claims are not cognizable for review in an application for post-conviction relief." LSA-C.Cr.P. 930.3; State ex rel. Melinie v. State, 93-1380 (La. 1/12/96), 665 So.2d 1172; State v. Cotton, 09-2397 (La. 10/15/10), 45 So.3d 1030.

Lastly, relator claims that the district court erred in denying his claims without an evidentiary hearing. LSA-C.Cr.P. art. 929(A) provides that "[i]f the court determines that the factual and legal issues can be resolved based upon the application and the answer, and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or available to the court, the court may grant or deny relief without further proceedings." Accordingly, we find no error in the district court's denial of relator's claims without an evidentiary hearing.

Based on the foregoing, we find no error in the district court's denial of relator's application for post-conviction relief. This writ application is denied.[15]

The Louisiana Supreme Court thereafter denied petitioner's related writ application

without assigning additional reasons.[16]

---

[15] Netter v. Cain, No. 14-KH-104 (La. App. 5th Cir. Mar. 14, 2014); State Rec., Vol. 2 of 3.

[16] State ex rel. Netter v. Cain, 157 So.3d 591 (La. 2015); State Rec., Vol. 3 of 3.

### **Procedural Bar**

As a preliminary matter, the undersigned notes that the state argues that one of petitioner's claims, i.e. that he received ineffective assistance in connection with the sentencing proceedings, is procedurally barred. For the following reasons, the state is correct.

The United States Fifth Circuit Court of Appeals has explained:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted). Moreover, where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned. Id. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

Here, petitioner's claim that his counsel was ineffective in connection with the sentencing proceedings was denied by the state courts pursuant to La. Code Crim. P. art. 930.3, State *ex rel.* Melinie v. State, 665 So.2d 1172 (La. 1996), and State v. Cotton, 45 So.3d 1030 (La. 2010). All of those authorities clearly concern procedural matters: article 930.3 limits the grounds on which a prisoner may seek post-conviction relief; the Melinie decision held that article 930.3 does not allow post-conviction challenges to sentencing errors; and Cotton held that article 930.3 and Melinie bar post-conviction claims alleging ineffective assistance of counsel in sentencing matters.

Moreover, federal courts have repeatedly held that article 930.3 and the <u>Melinie</u> and <u>Cotton</u> decisions are "independent" and "adequate" state rules to support a procedural bar in federal court. <u>See, e.g.</u>, <u>Hull v. Stalder</u>, No. 99-31199, 2000 WL 1598016 (5th Cir. Sept. 28, 2000) (article 930.3 and <u>Melinie</u> are "independent" and "adequate" state grounds to support a procedural bar); <u>Reavis v. Hedgeman</u>, Civ. Action No. 15-1982, 2015 WL 7307329, at *6-7 (E.D. La. Nov. 6, 2015) (article 930.3, <u>Melinie</u>, and <u>Cotton</u> are "independent" and "adequate"), <u>adopted</u>, 2015 WL 7306440 (E.D. La. Nov. 19, 2015); <u>Williams v. Vannoy</u>, Civ. Action No. 14-1914, 2015 WL 3505116, at *6-7 (E.D. La. June 3, 2015) (same); <u>Williams v. Strain</u>, Civ. Action No. 13-2998, 2014 WL 5305634, at *5-6 (E.D. La. Oct. 15, 2014) (same); <u>Johnson v. Cain</u>, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (same); <u>Evans v. Cain</u>, No. 11-2584, 2012 WL 2565008, at *6-8 (E.D. La. Mar. 14, 2012) (same), <u>adopted</u>, 2012 WL 2565001 (E.D. La. July 2, 2012).

Where, as here, the procedural rules invoked by the state courts are "independent" and "adequate, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." <u>Hughes v. Johnson</u>, 191 F.3d 607, 614 (5th Cir. 1999). However, "[t]o establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." <u>Johnson v. Puckett</u>, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Here, petitioner makes no attempt to establish "cause" for the procedural default of this claim. Further, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." <u>Martin v. Maxey</u>, 98 F.3d 844, 849 (5th Cir. 1996).

When a petitioner has failed to meet the "cause and prejudice" test, a federal court should normally consider his claim only if the application of the procedural bar would result in a

"fundamental miscarriage of justice."  That exception is a limited one which exists only if a petitioner makes a colorable showing that he is "actually innocent."  See Bagwell v. Dretke, 372 F.3d 748, 757 (5th Cir. 2004); Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998).  However, the Court notes that it is unclear whether the exception even applies at all to cases, such as this one, in which the defaulted claim relates merely to a matter concerning a noncapital sentence.

In Haley v. Cockrell, 306 F.3d 257 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals, after noting that a split exists among the circuits on that issue, held that the "actual innocence" exception is available to petitioners in noncapital proceedings who claim they were erroneously sentenced.  Id. at 265-66.  The Haley court further held that, when barred claims dealt with such alleged sentencing errors, the "actual innocence" requirement is met only when the petitioner shows that "he would have not been legally eligible for the sentence he received."  Id. at 264.  However, the Supreme Court subsequently vacated the Haley decision on other grounds and remanded the case to the Fifth Circuit.  Dretke v. Haley, 541 U.S. 386 (2004).  In so doing, the Supreme Court expressly declined to answer the question of whether the "actual innocence" exception applies to noncapital sentencing errors.  Id. at 393-94.

This Court does not attempt to answer the question left open by the Supreme Court. Nevertheless, even if the "actual innocence" exception is applicable to defaulted claims regarding such matters, petitioner has not alleged, much less shown, that he was *legally ineligible* for the sentence imposed, i.e. a term of life imprisonment without benefit of parole, probation, or suspension of sentence as a fourth offender.

Accordingly, for all of the foregoing reasons, the undersigned finds that petitioner's claim that his counsel was ineffective in connection with the sentencing proceedings is procedurally barred from federal review.

## Remaining Claims

Petitioner's remaining ineffective assistance of counsel claims are not procedurally barred. Nevertheless, they should be denied for the following reasons.

As noted, those remaining claims were denied on the merits. Because such ineffective assistance of counsel claims present a mixed question of law and fact, this Court must defer to the state court decision rejecting those claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ___, ___, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's remaining ineffective assistance of counsel claims.

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims: Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was

ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong of the <u>Strickland</u> test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  <u>See</u> <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  <u>Id</u>.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  <u>Crockett</u>, 796 F.2d at 793.

Petitioner first alleges that counsel failed "to perform proper pre-trial discovery, investigate, interview and call witnesses."[17]   However, as the state courts noted, the problem is that petitioner failed to provide any evidence in support of those allegations.   Petitioner did not establish that counsel's investigation was in fact inadequate in any respect – on the contrary, he presented no evidence whatsoever as to what investigative steps counsel took or failed to take. Without such evidence, he cannot show that counsel performed deficiently.

Further, even if petitioner had made that showing, he would then additionally have to prove that prejudice *actually* resulted from the purportedly inadequate investigation and discovery.  To make that showing, he must point to evidence in the record demonstrating that further investigation and discovery would have revealed additional information beneficial to the defense.  See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec.11, 2008).   Here, he has not shown that any such beneficial information would have been revealed by further investigation and discovery; rather, his assertions are entirely speculative and unsupported by any evidence whatsoever.  It is beyond cavil that such bare speculation does not suffice to meet his burden of proof.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

    That same defect also exists with respect to petitioner's related contention that counsel was ineffective for failing to call witnesses to testify at trial.  As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal
> habeas review because the presentation of witnesses is generally a matter of trial
> strategy and speculation about what witnesses would have said on the stand is too

---

[17] Rec. Doc. 3, p. 17.

> uncertain.  For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets

omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o

prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner

must name the witness, demonstrate that the witness was available to testify and would have done

so, set out the content of the witness's proposed testimony, and show that the testimony would

have been favorable to a particular defense.").

Here, petitioner presented no evidence, such as affidavits from the uncalled witnesses,

demonstrating that they would have testified in a manner beneficial to the defense.  Therefore,

again, he obviously failed to meet his burden of proof with respect to this claim.  See, e.g., United

States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of

ineffective assistance of counsel when the only evidence of a missing witness's testimony is from

the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July

7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29,

2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a

petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on

that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844,

at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar

matter, from the alleged favorable witnesses suggesting what they would have testified to, claims

of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No.

6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit

(or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Petitioner next alleges that counsel was ineffective for failing "to file necessary motions." However, petitioner identified no necessary motions that went unfiled.  Rather, petitioner's discussion of this claim concerned only the adequacy of the sanity evaluation.  Although he conceded that defense counsel filed a motion for the appointment of a sanity commission and that the doctors appointed to evaluate him "reported no significant psychopathology or symptoms of mental illness," he opined that the doctors were "hired guns" rather than impartial experts.[18]  He suggested that counsel should have done more to secure reliable testing and evaluations.  However, petitioner has failed to demonstrate that other resources for testing and evaluation were available to the defense.  More importantly, he also failed to offer any evidence whatsoever that different experts would have reached contrary conclusions; instead, he merely speculates that they *might* have done so.  Again, such bald and unsupported speculation is clearly insufficient to meet a petitioner's burden of proof.

Petitioner also alleges that his counsel was ineffective for failing "to prepare and present a defense."[19]  Specifically, he faults his counsel for not presenting a "viable sanity defense."[20] However, for petitioner to be entitled to relief on that claim, he must demonstrate that there was a reasonable probability that an insanity defense would have had merit.  Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996) ("[I]f there exists no reasonable probability that a possible defense would have succeeded at trial, the alleged error of failing to disclose or pursue it cannot be prejudicial."); see also Krist v. Foltz, 804 F.2d 944, 946 (6th Cir. 1986) ("An attorney is not required to present

---

[18] Rec. Doc. 3, pp. 21-22.
[19] Rec. Doc. 3, p. 22.
[20] Id.

a baseless defense or to create one that does not exist."); United States v. Washington, Cr. A. 95-

124-3 and Civ. A. 97-2371, 1997 WL 327459, at *2 (E.D. Pa. June 12, 1997) (counsel is not

ineffective in failing to raise a meritless defense, because the outcome of the proceeding would

not have been different if the defense had been raised).   In the instant case, petitioner has not

demonstrated that an insanity defense had a reasonable probability of success.   Moreover, for the

following reasons, the Court notes that there is no reason to believe he could do so.

Although petitioner alleged he had a history of "severe depression and substance abuse,"[21]

he presented no evidence on that issue.   Further, the only evidence in the record concerning that

issue, i.e. the written evaluation by the experts appointed for the sanity commission, was to the

contrary.   In their report, the experts stated that, at the time of their examination, petitioner "was

not manifesting any signs or symptoms of a major psychiatric illness" and "displayed no signs or

symptoms of suffering from any major psychopathology."   They further noted:  "He did report a

*distant history* of having received psychiatric treatment, primarily for depression and difficulties

with sleep, *dating to 1992 through 1993.  Otherwise, he has never sought, nor received, any*

*psychiatric treatment at any other time in his life*."[22]

Moreover, the undersigned notes that a history of such problems is not, in and of itself, an

adequate foundation for a viable insanity defense.   With respect to the insanity defense, Louisiana

law provides:

> If the circumstances indicate that because of a mental disease or defect the offender
> was incapable of distinguishing between right and wrong with reference to the
> conduct in question, the offender shall be exempt from criminal responsibility.

---

[21] Rec. Doc. 3, p. 22.
[22] State Rec., Vol. 2 of 3, Report of Drs. Rafael F. Salcedo and Richard W. Richoux dated July 7, 2010 (emphasis added).

La. Rev. Stat. Ann. § 14:14.  However, it is clear that "[c]riminal responsibility is not negated merely by the existence of a mental disease or defect...."  State v. Williams, 346 So.2d 181, 186 (La. 1977); see also Morgan v. Cain, Civ. Action No. 05-6479, 2007 WL 3025056, at *7 (E.D. La. Oct. 15, 2007).  Rather, a mental disease or disorder short of legal insanity is insufficient to support an insanity defense.  Williams, 346 So.2d at 186; see also Morgan, 2007 WL 3025056, at *7; State v. Koon, 704 So.2d 756, 768 (La. 1997); State v. Weber, 364 So.2d 952, 956 (La. 1978).

In the instant case, petitioner brought forth no evidence to show that he was mentally impaired at the time he committed the crime in this case, much less that he was so significantly impaired as to have been incapable of distinguishing between right and wrong with respect to his criminal conduct.  In the absence of such evidence, it is clear that he failed to meet his burden to prove that counsel performed deficiently in failing to pursue an insanity defense or that any prejudice resulted.  See Otero v. Louisiana, Civ. Action No. 12-1332, 2013 WL 6072716, at *14-15 (E.D. La. Nov. 18, 2013); see also Mack v. Warden, Louisiana State Penitentiary, Civ. Action No. 3:11-cv-0735, 2012 WL 702396, at *4 (W.D. La. Jan. 30, 2012), adopted, 2012 WL 704831 (W.D. La. Mar. 1, 2012); Morgan, 2007 WL 3025056, at *7-8.

Lastly, petitioner argues that the cumulative effect of the foregoing errors warrants relief. However, where, as here, a petitioner has failed to show that his counsel was ineffective in any respect, "there is nothing to cumulate."  Villaneuva v. Stephens, 555 Fed. App'x 300, 308 (5th Cir. 2014); accord United States v. Thomas, 724 F.3d 632, 648 (5th Cir. 2013) ("[T]here is no precedent supporting the idea that a series of 'errors' that fail to meet the standard of objectively unreasonable can somehow cumulate to meet the high burden set forth in Strickland.");  Poindexter v. Quarterman, 537 F.3d 511, 525 (5th Cir. 2008) ("[T]he district court noted that '[m]eritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised'.  We

agree."); United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006) ("Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions.").

Out of an abundance of caution, the Court also notes that petitioner complains that his lack of evidence to support his claims stems from the fact that he was not afforded a post-conviction evidentiary hearing in the state courts. However, that complaint is misplaced because state law required no such hearing. On the contrary, as the Louisiana Fifth Circuit Court of Appeal noted, Louisiana law expressly provides for summary disposition of post-conviction applications: "If the court determines that the factual and legal issues can be resolved based upon the application and answer, and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or available to the court, the court may grant or deny relief without further proceedings." La. Code Crim. P. art. 929(A). Further, the state court's decision on such matters is not reviewable in federal court. As one court recently explained:

> To the extent that petitioner complains that the State Court denied his post-conviction application without holding an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 929(A), that claim is not cognizable in this federal habeas corpus proceeding. In this case, the trial court determined that it could properly resolve petitioner's post-conviction application pursuant to article 929(A). Federal courts "do not sit as a super state supreme court...." Taylor v. Cain, 2010 WL 6620876, *12 (W.D. La. 2010) citing Skillern v. Estelle, 720 F.2d 839, 852 (5th Cir. 1983). Thus, it is not the province of this court to determine if the state courts properly applied state law. Id. citing Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991) and Narvaiz v. Johnson, 134 F.3d 688 (5th Cir. 1998). Moreover, the Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable under 28 U.S.C. § 2254. Id. (and cases cited therein including Moore v. Dretke, 369 F.3d 844, 846 (5th Cir. 2004), Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir.), cert. denied, 534 U.S. 1001, 122 S.Ct. 477, 151 L.Ed.2d 391 (2001), Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Kidd v. Keith, 2014 WL 463056, *5 (W.D. La. 2014) (citations omitted).

Pitts v. Tanner, Civ. Action No. 6:14-cv-3145, 2015 WL 10045174, at *23 (W.D. La. Dec. 14, 2015), adopted, 2016 WL 554884 (W.D. La. Feb. 10, 2016); accord Smith v. Terrell, Civ. Action No. 09-3791, 2009 WL 4799190, at *3 (E.D. La. Dec. 7, 2009).

Lastly, the Court further notes that petitioner is not entitled to a federal evidentiary hearing to secure new evidence in support of his claims. On the contrary, the United States Supreme Court has expressly stated:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court.
>
> This understanding of the text is compelled by "the broader context of the statute as a whole," which demonstrates Congress' intent to channel prisoners' claims first to the state courts. The federal habeas scheme leaves primary responsibility with the state courts. Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo.*
>
> Limiting § 2254(d)(1) review to the state-court record is consistent with our precedents interpreting that statutory provision. Our cases emphasize that review under § 2254(d)(1) focuses on what a state court knew and did. State-court decisions are measured against this Court's precedents as of the time the state court renders its decision. To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision applies a rule that contradicts such law and how the decision confronts the set of facts that were before the state court. If the state-court decision identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case. It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.

Cullen v. Pinholster, 563 U.S. 170, 181-83 (2011) (citations, quotation ma2254rks, brackets, and ellipsis omitted).

In summary, to be entitled to relief, petitioner must demonstrate that, based on the record as it existed before the state court, the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  He has not made that showing in the instant case.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## RECOMMENDATION

It is therefore **RECOMMENDED** that federal application for habeas corpus relief filed by Rene Netter be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[23]

New Orleans, Louisiana, this sixth day of October, 2016.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[23] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

24